## Webster *versus* Webster.

1. The heirs of a decedent may maintain ejectment for land of which their ancestor died out of possession.

2. One of the heirs contracted to sell his share to another heir who paid part of the purchase-money, went into possession of the whole and continued in possession; this raised an equity, and in an action of ejectment by the vendor, it was proper to direct a conditional verdict.

3. It was right for the judge at chambers to make an order for paying the money into court to await the making of a deed.

4. An habere facias issued after the payment of the money under such order, was properly set aside.

5. The time limited by the verdict, in which to pay the money, does not always control; there may be cases in which equity may enlarge the time.

6. The Act of April 22d 1856, § 6, does not bar a party in possession from setting up an equity under a contract of sale after five years.

ERROR to the Court of Common Pleas of *Erie county*.

This was an action of ejectment, commenced January 24th 1865, by Samuel H. Webster and Lucinda I. Clark, heirs of William Webster, deceased, against John Webster, for the undivided seventh part of 50 acres of land. Joseph Webster died in 1836, seised of the whole tract, leaving seven children, of whom the defendant and William Webster, the father of the plaintiffs, were two.

On the 5th of August 1842, William, who resided in Illinois, entered into a contract with his brother John for the sale of his (William's) interest in the land for $78.50, of which $13.50 were then paid. John went into possession of the land in 1843, made improvements, and has continued thereon since. William died in Illinois in 1843, intestate, leaving his widow (who took out administration on his estate in Illinois in 1846) and his two children, the plaintiffs. A witness some four years after called on the defendant at the request of the widow for the money due on the land; the defendant said he " was willing to pay when they would make him a good title."

3 P. F. SMITH—11

[Webster *v.* Webster.]

The court (Derrickson, A. J.) charged :—

" On the evidence before us, if credited, the plaintiffs are entitled to a verdict for one-seventh of the land [to be released on the payment of $151.42, the purchase-money and interest due and owing], in such reasonable time as the jury may determine. The plaintiffs' 2d point assumes, that the delay of the defendant for over twenty-three years to pay the purchase-money, and the frivolous excuse he gave therefor, when called upon by the administratrix of the estate of William Webster, the vendor, with the trifling amount paid at the time of the alleged contract, and the whole circumstances show such gross negligence that he is not now entitled to hold the land on the payment of what is due.

" [If the defendant was seeking a specific performance of his contract of purchase, under the facts indicated by the evidence, it is quite probable he might not succeed. He is, not, however, doing this, but is resisting a recovery of the land of which he has had the exclusive possession for more than twenty-one years.] And were it not for the fact which the evidence discloses, that the presumption of payment of purchase-money which arises after the lapse of twenty-one years, is repelled by demands therefor at different intervals, and the promises to pay it on certain conditions, the plaintiffs would have to fail in their present efforts ; [but the presumption being removed, they must have either the purchase-money or the land, and it is optional with the defendant to say which they shall have. Delay has been mutual, and if the defendant has taken advantage of it, it has been by the indulgence of the plaintiffs, for they or their ancestor might have prevented it by calling on the other to pay or turn out.]

" The doctrine advanced in the defence is, that because William Webster, the vendor, died out of possession, and therefore not seised, the descent to the plaintiffs, his heirs, is broken, and hence they cannot recover. But how was the descent broken ? The legal title was in their father, and an equity in the defendant by virtue of his purchase. And on the death of the former, the legal title would descend to his heirs, who would have the same rights under it that the ancestor himself, if living, would have, and if they could not enforce them, it would follow as a consequence that the defendant would hold the land without paying for it. Hence, the administratrix of the decedent might bring an ejectment or an action for the purchase-money, but her omission to do so would not interfere with the rights of the heirs.

" [The plaintiffs' 3d point is, that as by the 6th section of the Act of April 22d 1856, ' No right of entry shall accrue, *or action be maintained for a specific performance* of *any contract* for the sale of real estate, but within five years after such contract was made,' the defendant cannot claim a specific performance of his contract. This doubtless would be so if the defendant were ask-

ing the aid of the law to enforce a specific performance of his contract of purchase. But he is not. He is resisting a recovery against him, which he may do, but on terms before indicated.] The further suggestion by the defendant's counsel is, that the plaintiffs being minors and therefore unable to make a deed, will prevent their recovering the land. If suit were on the contract it would have to be by the administratrix, and part of their evidence would be in the tender of a deed; but this would not be necessary in ejectment by the ancestor, nor is it in the present one by his heirs."

The jury rendered a *conditional* verdict for the plaintiff, on the 19th December 1865, to be released upon the payment of the $65 and interest in thirty days. On the 2d day of January 1866, on motion of the defendant's attorneys, Judge Derrickson (the court not being in session) gave leave to the defendant to pay the money into court, to be taken out by the plaintiffs on their filing a deed.

On the 12th of March 1866, the money not having been paid to *plaintiffs* within the thirty days mentioned in the verdict, they issued a *habere facias possessionem*, which the court, June 15th 1866, set aside.

The plaintiffs assigned for error those parts of the charge included in brackets; also, that the court charged that the verdict should be conditional instead of absolute, and setting aside the *habere facias*.

*S. E. Woodruff*, for plaintiffs in error, cited, as to the charge, Henderson *v.* Hays, 2 Watts 148; Dauchy *v.* Pond, 9 Id. 49; Cook *v.* Grant, 16 S. & R. 210; Act of April 22d 1856, § 1, Pamph. L. 532; Sutter *v.* Ling, 1 Casey 466; Miller *v.* Franciscus, 4 Wright 340, 341; Hanmar *v.* McEldowney, 10 Id. 334. As to setting aside the *habere*, Cadwallader *v.* Berkheiser, 8 Casey 43.

*J. C. & F. F. Marshall*, for defendant in error, cited as to the charge, Markley *v.* Swartzlander, 8 W. & S. 172; Hall *v.* Holmes, 4 Barr 251. As to setting aside the *habere*, Shaw *v.* Bayard, 4 Barr 257; Creigh *v.* Shatto, 9 W. & S. 83; Matthews *v.* Awkwright, 2 Binn. 93.

The opinion of the court was delivered, October 25th 1866, by

THOMPSON, J.—The legal title to the land in controversy, if in Joseph Webster, Sr., at his death descended to his heirs, and they could unquestionably maintain ejectment upon it, and recover unless prevented by some controlling equity. The defendant set up a contract for the land with the ancestor of the plaintiff; a partial payment of the purchase-money, and long-continued pos-

[*Webster v.* Webster.]

session under it. This was an equity the court could not disregard, and the moment this appeared to be so, the proceeding assumed the shape of an equity proceeding, 1 Casey 466, and subject to equity principles, although to be administered in a common-law action. It was right, therefore, to direct a conditional verdict if the contract was binding. So, too, under the circumstances, we think it was entirely within the power of the judge acting as a chancellor, to make the order he did, for the payment of the money into court to await the making of a deed by the proper parties. It is manifest if he did not take such a step, either the defendant would be obliged to pay his money to the heirs to save the condition in the verdict, and then run the risk of ever getting a deed, or on failure to pay lose the land. The money was ordered into court, and paid accordingly, and of this the plaintiffs had notice. If after this they issued a *habere facias* without leave of court, they of course have not much reason to complain that it was set aside, for it was directly in conflict with the order to pay the money into court. As we think the order was right, so we think that the setting aside the *habere facias* was right, and within the power of the judge as chancellor. The time limited within which the money is by the verdict to be paid, does not always absolutely control. There may be cases in which equity may require an enlargement of the time: Creigh *v.* Shatto, 9 W. & S. 82, and other cases. There was no forfeiture here, therefore, by reason of the non-payment of the money to the plaintiffs, for the judge modified the performance by the defendant, as he might do, in order more effectually to do equity.

The objection to the defendant's equity, that it was barred by the Act of 22d April 1856, was not well considered. This is a limitation beyond which an *action* for specific performance of a contract for the sale of real estate cannot be maintained. But that was not the defendant's position. He was simply setting up an equity, which he had been asserting by living and improving under it for upwards of twenty years. There is no statute to debar him from that. We have lately held in Clark *v.* Trindle *et al.*, 2 P. F. Smith 492, that a party in possession is not barred by the act from setting up an equity, as he would be from enforcing it by action.

We see nothing wrong in the action of the court in any particular in the case, and we must affirm it. We are not called on to say anything about who will be entitled to the money, or who is to make title. The court below will no doubt rightly determine that in due season.

Judgment, as well as the subsequent proceedings, affirmed.