## APPEAL OF E. M. WHEATLAND.

[ESTATE OF GEORGE BLAKE, A LUNATIC.]

FROM THE DECREE OF THE COURT OF COMMON PLEAS OF MONT-
GOMERY COUNTY.

Argued February 4, 1889—Decided March 25, 1889.

[To be reported.]

1. Where the real estate of a lunatic is sold under the provisions of § 22, act
   of June 13, 1836, P. L. 597, and the lunatic dies pending the distribution
   by an auditor of the fund arising therefrom, the proceeding is not stayed
   or the cause of distribution altered by the lunatic's death.
2. The committee is but the receiver of the court as to the proceeds of the
   real estate sold, and the fund when it comes into his hands is a trust fund
   applicable in the first instance to the specific purpose for which it was
   raised.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, MC-
COLLUM and MITCHELL, JJ.

No. 363 January Term 1888, Sup. Ct.; court below, No. 133
October Term 1885, C. P.

On May 7, 1886, George Hand, committee of George Blake,
a lunatic, filed an account showing a balance in his hands due
the estate of $437.03. Exceptions having been filed to said
account, on June 21, 1886, *Mr. J. W. Apple* was appointed
auditor to hear and determine the exceptions and to report
distribution.

Mr. Apple soon afterwards died, and on July 5, 1887, *Mr. J.
P. Hale Jenkins* was appointed auditor in his stead, who on
September 6, 1887, filed a report showing the facts out of which
the controversy arose to be as follows :

On October 5, 1885, upon proceedings regularly conducted,
George Blake was adjudged a lunatic, and George Hand ap-
pointed the committee of his estate. On October 24, 1885, a
petition was presented by the committee setting forth that the
lunatic, having no personal estate and his real estate being ur-
productive and unimproved, had no means of support, and,
annexing a schedule of the debts of the lunatic, prayed for an
order to sell the real estate which was granted. A return of

the sale of real estate was confirmed on May 7, 1886. On July 17, 1886, the lunatic died insolvent leaving a will dated April 29, 1882, which was duly admitted to probate on August 25, 1886, and letters testamentary thereon issued to Hiram Blake and George E. Blake, the executors therein appointed.

Finding the foregoing facts the auditor reported as follows:

The first question raised for the auditor's decision is that presented by Mr. Dickinson, who claims the entire fund, as counsel for the executors of George Blake, the lunatic, now deceased, and claims that the auditor's duty simply is, to award the entire fund to them. At the argument, however, Mr. Dickinson admitted that the bills contracted by the committee should be paid. If this position be the true one it will simplify the duties of the auditor.

Has the Court of Common Pleas jurisdiction of this account, under the foregoing facts, sufficient to distribute the fund in the hands of the committee to and among the creditors of the deceased lunatic? That a distribution to the next of kin cannot be made in the Common Pleas is ruled in Frankenfield's App., 11 W. N. 373. This case is relied upon by the counsel for the executors of this deceased lunatic, as authority against any distribution of the balance in the hands of the committee. Let us see if the case referred to is applicable.

The 20th section of the act of June 13, 1836, the act relating to lunatics and habitual drunkards, is in the following language: "The committee of the estate of every person found to be a lunatic or habitual drunkard as aforesaid, shall have the management of the real and personal estate of such person, and shall from time to time apply so much of the income thereof as shall be necessary to the payment of his just debts and engagements, and the support and maintenance of such person and of his family, and for the education of his minor children.

The 22d section provides: "If the personal estate of such lunatic or habitual drunkard shall not be sufficient for the purposes aforesaid, it shall be lawful for the Court of Common Pleas having jurisdiction of the accounts of the committee of such person, to make an order authorizing such committee to sell at public sale, or mortgage, such parts of the same as the said committee shall deem expedient."

The court in conformity to the 22d section, directed that the real estate should be sold. For what purpose was it sold? The petition upon which the order was granted scheduled the debts, and stated that there was no personal estate to pay them, and further stated that it would require the sum of $250 annually to support and maintain said lunatic, and that the income of his estate was insufficient for that purpose. The order then clearly was for the purpose of raising money to pay said debts and maintain said lunatic. Even without noticing the order of the court to sell, a close reading of the act seems to indicate that the moment George Blake was declared a lunatic, the rights of the creditors as they then existed immediately attached and became a charge on the assets, as they subsequently came into the hands of the committee: Wright's Appeal, 8 Pa. 57; if all could not be paid in full, then pro rata, as the accounts may be ascertained by subsequent proceedings. The act even provides that a creditor may issue a summons against a lunatic and have the amount thus ascertained by judicial process. And it was held in Eckstein's Est., 1 Pars. 59, that the amount thus ascertained " if prosecuted bona fide to judgment would be conclusive, as to the amount and merits of plaintiff's demand."

It must be remembered that in the case now under consideration, after the appointment of the committee, an application under the 22d section of the act aforesaid was made to the court for the sale of the lunatic's real estate. To obtain this order certain debts were scheduled, as being at the time existing claims against the lunatic. On the faith of that petition, to pay the debts of the lunatic and to maintain him, the order to sell was granted. The fund thus realized, was realized for a specific purpose. The arm of this court was extended to prevent the consequent wrangle which would have ensued had not this course been pursued. The real estate having been converted into cash for the purpose of paying the debts and maintaining the lunatic, can it be possible now, that the court has not jurisdiction to distribute the fund among these claimants, obtained, as Chancellor KENT observed in Brasher v. Cortlandt, 2 Johns. Ch. 402, by " the trustee of the creditors and the agent of the court?"

Is not the case of an assignor, dying after the assignment

for the benefit of creditors, an analogous case? In such a case the creditor's rights attach immediately after the assignment by the act of the assignor himself; in the case under consideration by operation of law. Can it be successfully held that in the case of an assignor, dying after the assignment, that the executor of the assignor could obtain the whole fund for distribution to and among the creditors at the time of his decease? The debts may have been increased; can the creditors be subjected to the possibility of such an increase, or the necessary expense incurred in both settlements? The committee here is entitled to commissions; so would the executors be. The full cost of an administration would be incurred and the fund lessened, so that practically nothing would be left to distribute. After the payment of all debts, the balance of course would have to be paid the executors. So are they here.

Morrison's Case, cited by counsel for the executors, in 9 W. & S. 117, was a case of an execution against a decedent's estate, where the surplus only was awarded to the administrator of the decedent by the court. In that case the officer of the law, the sheriff, was directed by his writ to sell the real estate to satisfy the judgment. After this purpose was accomplished, and the payment of the liens against the decedent, obtained during his lifetime, the balance only was paid to the executor or administrator. If Morrison's Case was an authority for the counsel citing it, it should have ruled that the entire fund was to be paid to the administrator. Not doing this, the auditor holds it as authority against the position held by the counsel for the executors.

In Frankenfield's App., supra, exception was taken to the distribution of the estate to and among the heirs of the lunatic. This exception was sustained. There were other facts adjudged by the court below. Whether any debts were paid, does not appear from the meagre report of the case. The exception made seems to indicate that none were passed upon. If any were paid, no exception was taken thereon. In this case, the estate is insolvent and the heirs consequently get nothing. If Frankenfield's Appeal rules this case, then the debts, which under Wright's Appeal became a charge, are by the death of the lunatic diverted and postponed to those made subsequent to the approval of the inquisition. The auditor

does not believe this to be the law, and therefore rules that the court has jurisdiction to distribute the fund in hand to and among the creditors of the lunatic.

In addition, this fund having been raised for a special purpose, this purpose is not subserved until distribution is made: Wright's Appeal, 8 Pa. 57; Eckstein's Est., 1 Pars. 59; Morrison's Case, 9 W. & S. 117; Todd v. Rhoads, 37 Pa. 60.

The auditor then reported a distribution of the fund to the creditors of the deceased lunatic, when exceptions were filed by the executors of the deceased, that the auditor erred in not awarding the entire fund to them.

The exceptions being argued, the court, SWARTZ, P. J., on January 16, 1888, filed the following opinion and decree:

The committee in lunacy paid the liens of record and the expenses of the inquisition, including the costs of the proceedings to sell the real estate. After these payments were made there was a balance of $437.03 in the committee's hands, and an auditor was appointed to make distribution of the same. The lunatic died after the auditor was appointed. Had the auditor appointed by the Common Pleas authority to make distribution among the creditors, or should the fund have been awarded to the executors of the deceased lunatic?

The auditor makes the distribution and does so mainly upon the theory that these debts were contracted by the committee. We fail to see why these claims should be paid by the committee rather than by the executors of the estate of George Blake. They are the debts of the estate of George Blake, deceased, and if by reason of the proceedings in the Common Pleas they secured any preference, such preference can be worked out in the distribution in the Orphans' Court as well as in the Common Pleas. The facts as taken from the testimony, however, show that the major portion of the claims allowed by the auditor were for debts contracted by George Blake before he was adjudged a lunatic. We fail to see any good reason why this balance should not have been distributed through the executors in the Orphans' Court. This is the court that has full authority to make distribution in a decedent's estate, and to it all creditors look for a proper adjudication of their claims: Whiteside v. Whiteside, 20 Pa. 473; Linsenbigler v. Gourley, 56 Pa. 166.

Why should this estate be distributed without giving to all claimants a full hearing in the Orphans' Court, the only place where all can be heard? The committee by filing a petition in the Common Pleas cannot give such a preference to some of the debts of the estate as will exclude all others. The claimants for funeral expenses must have an opportunity to be heard. It will not do to say to them, you have no standing here, and then distribute the whole estate to others. If their claims are to be adjudicated in the Orphans' Court, then the fund must pass to the Orphans' Court for distribution.

Frankenfield's Appeal, 11 W. N. 373, rules this case. The auditor should have awarded the executors the sum of $370.47 for distribution in the Orphans' Court. This was the property of the lunatic when he died. It is entirely unlike the proceedings in an assigned estate, where the assignor transfers his estate for a specified purpose, and it cannot be likened to proceedings upon an execution, where the law takes the property from the debtor and distributes it among the lien creditors. The sale in this case was but a conversion of the lunatic's real estate. The money belonged to him. The duties of the committee ended with the death of the lunatic. The law provided a new custodian for the fund.

And now, January 16, 1888, the 1st exception filed by Hiram Blake, executor of George Blake, deceased, is sustained and the report of the auditor is referred back to him to make distribution in accordance with this opinion.

The auditor having made a second report awarding the balance shown by the account, less the costs of audit, to Hiram Blake and George E. Blake, executors of George Blake, deceased, the same was confirmed, when E. M. Wheatland, a creditor receiving an award under the former report took this appeal, specifying that the court erred in sustaining the exception filed to the first report of the auditor and awarding the fund to the exceptants.

*Mr. N. H. Larzelere* (with him *Mr. M. M. Gibson*), for the appellant :

Frankenfield's App., 11 W. N. 373, does not control this case. In that case the distribution was of personal property to

the next of kin.   In this, it was the distribution of the proceeds
of real estate raised by a sale under § 22, act of June 13, 1836,
P. L. 597.   In that case the account was filed by the committee
after the death of the lunatic, for the purpose of winding up
his estate in the committee's hands.   In this case, the sale was
made and the fund realized for the payment of debts, the
account filed and an auditor appointed and performing his duties
of distributing it among the creditors when the lunatic died.
The question is, who were the creditors entitled to this fund?
What debts shall it pay?   These questions are answered by
Wright's App., 8 Pa. 57; Eckstein's Est., 1 Pars. 59.

*Mr. Montgomery Evans* (with him *Mr. H. B. Dickinson*), for
the appellees:
1. Section 21, act of February 24, 1834, P. L. 76, provides
that " All debts owing by any person in this state at the time
of his decease, shall be paid by his executors or administrators,
so far as they have assets," etc.   " If there be anything besides
death which is not to be doubted, it is that the Orphans' Court
alone has authority to ascertain the amount of a decedent's
property and order its distribution among those entitled to it:"
Whiteside v. Whiteside, 20 Pa. 473; Linsenbigler v. Gourley,
56 Pa. 166; Frankenfield's App., 11 W. N. 373.
2. The cases of Wright's Appeal, 8 Pa. 57, and Eckstein's
Est., 1 Pars. 59, have no application.   They relate to the
estates of living lunatics and decide that creditors cannot in
any way, after inquisition, obtain a lien upon and preference
in a lunatic's estate.   They show that the necessities of a luna-
tic are superior even to the rights of his creditors.   When a lun-
atic dies, leaving any estate, the claims of humanity and decency
to have him buried are superior to the claims of creditors who
have not secured a lien upon his property by judgment ob-
tained before his lunacy was legally established.   Those who
have just claims for funeral expenses against the executors are
entitled to payment, but such claims can only be adjudicated
in the Orphans' Court.

OPINION, MR. JUSTICE CLARK:
The facts of this case are not in dispute; they are stated in
the paper book, furnished at the argument, substantially as
follows:

October 12, 1885, upon the return of a writ de lunatico inquirendo to the Common Pleas of Montgomery county, George Blake was found to be a lunatic, and George Hand was appointed the committee of his estate. October 24, 1885, the committee presented a petition to the Common Pleas asking for an order to sell the lunatic's real estate to pay his debts, and for maintenance, alleging that he possessed no personal estate, and the sale was ordered. March 11, 1886, the committee made return that the real estate had been sold for $1,000, and the sale was confirmed. At the time of the application for the sale, the debts of the lunatic amounted to $992.25, besides a lien for paving, done by the borough of Hatboro, where the real estate was located, amounting to $168.57. May 7, 1886, the committee filed an account in the Common Pleas, which, after credits for the expenses of the sale and the payment of the liens, left a balance of $437.03 for distribution among the creditors, their claims amounting to $627.90. June 16, 1886, exceptions were filed by certain of the creditors, and June 21, 1886, J. Wright Apple, Esq., was appointed auditor to dispose of said exceptions, and make distribution.

July 17, 1886, while the auditor was in the discharge of the duties of his appointment, George Blake, the lunatic, died; and thereupon, Hiram Blake and George E. Blake, executors under the will of George Blake, deceased, dated April 29, 1882, duly proven since his death, appeared before the auditor and claimed that the entire fund should be distributed to them, the will distributing the estate to certain of his children. The auditor proceeded with the audit, and there were probated before him the claims of all the creditors of the lunatic. Before the auditor had filed his report he died, and J. P. Hale Jenkins, Esq., was appointed to his place and stead.

September 6, 1887, the auditor filed his report, distributing the fund in the committee's hands, pro rata, among George Blake's creditors. The executors filed exceptions to the report, alleging error in not awarding the funds to them; the court sustained the exceptions and directed the auditor to award the fund to the executors. The auditor thereupon filed his supplemental report in accordance with the opinion of the court, awarding the fund to the executors. Ellwood M. Wheatland, the principal creditor of George Blake, deceased, filed exceptions

to the action of the court, which were overruled, and the report confirmed; whereupon Wheatland took out this appeal.

The only question for our consideration, in this case, is whether or not the balance in the hands of the committee on settlement of his accounts was, at the death of the lunatic, rightly awarded to his executors to be administered as assets of his estate.

It is contended on part of the appellant, that the committee held this fund upon the terms of a trust, over which the Common Pleas had full jurisdiction, that the Common Pleas had the power of distribution upon the footing of that trust, and that the distribution having been partially proceeded with, should have been made to and among the creditors directly and not to the executors.

The committee of a lunatic is, by the act of June 13, 1836, P. L. 597, intrusted with the management of his entire estate, real and personal; it is his duty to apply so much of the income thereof as shall be necessary to the payment of his just debts and engagements, to the support and maintenance of the lunatic and his family, and to the education of his minor children. If the income shall not be sufficient for the purposes stated, he may, under the direction of the Court of Common Pleas, having jurisdiction of his accounts, apply so much of the principal of the personal estate as may be necessary. If the personal estate shall not be sufficient the court may make an order authorizing the committee to sell or mortgage a part or the whole of the real estate. In such case, the expediency of selling a part or the whole, the terms of sale, and the amount of security required, are all matters for the determination of the court before the order issues, and upon a return, if the order of sale is confirmed, upon the committee giving security to the satisfaction of the court for the faithful application of the proceeds, according to the duties of his trust. Thus it will be seen that the sale of the real estate is under the immediate control and supervision of the court; indeed, the committee is but the receiver of the court, from which he derives his powers, and the fund, when it comes into his hands, is a trust fund as much in custodia legis as if deposited in bank to its credit, or locked up in the strong box of the court, under the care of its officers: Eckstein's Est., 1 Pars. 59. This fund, as we have

seen, is, in the first instance, applicable to the payment of his just debts. This was one of his specific trusts, declared by law, subject to which the committee held the fund in dispute. At the death of the lunatic the terms of the trust expired, but it still remained for the committee to settle his accounts, in order that the trust moneys in his hands might be applied according to the terms and conditions of the trust. The fund in his hands, as we have said, was in the custody and control of the court, and it was within the power and it was the duty of the court to see that it was properly applied.

It is certainly true, as a general rule, that the Orphans' Court alone has authority to ascertain the amount of a decedent's estate and to order its distribution among those entitled to receive it: Whiteside v. Whiteside, 20 Pa. 473; it is equally true that the Court of Common Pleas has not power to decree distribution of a fund in the hands of a trustee among the heirs or next of kin of the deceased cestui que trust: Johnson's Est., 2 Wh. 119; it must be awarded to the personal representatives, in order that after administration it may be distributed under the direction of the Orphans' Court, according to law: Frankenfield's App., 11 W. N. 373. But when the decedent's estate consists in part or in whole of moneys or property held upon the terms of a trust, the personal representatives can take only what remains after the trust is executed or fully settled; as in case of the death of one of two or more partners, his executors or administrators are only entitled upon the footing of an account after the payment of the joint debts: Story on Part., 367, 557.

In this case the fund was raised to be applied to a specific purpose; it was in the custody of the court, and was actually in process of distribution to the objects and purposes for which it was created, and we are of opinion that the proceeding was not stayed or the course of distribution altered by the death of the cestui que trust.

> The decree of the Common Pleas is reversed, and the record remitted in order that distribution may be made in accordance with this opinion; the appellees to pay the costs of this appeal.