## In re Wood.

*Rambo, Rambo & Mair*, for accountant.
*William Linton*, for Effie Eckman, claimant.

LAMBERTON, J., November 18, 1931.—On June 10, 1929, this court adjudged Bradley Wood to be a weak-minded person and incapable of taking care of his property, and appointed the Market Street Title and Trust Company as guardian. In the course of time, the Market Street Title and Trust Company became consolidated with Integrity Trust Company. Bradley Wood died March 10, 1931, leaving a last will and testament which has been duly probated in the office of the Register of Wills in and for the County of Philadelphia, wherein he appointed John F. Basford and Effie Eckman as his executors. Letters testamentary were duly issued to said persons. On August 8, 1931, Integrity Trust Company, as said guardian, filed with this court its first and final account, showing a balance of principal on hand for distribution in the sum of $9398.88 and a balance of income in the sum of $375.23.

Certain additional credits have been asked by the accountant as follows: prothonotary's costs, $10.25; advertising of account, $90.35; two certified copies of the record, $7, totaling $107.60, which are hereby allowed.

A petition was filed by the guardian, asking that the account be confirmed, and that the balance in its hands be distributed to John F. Basford and Effie Eckman, executors of the estate of Bradley Wood. When the account came before the court for confirmation, a claim was presented by Effie Eckman in an amount exceeding $12,000, based upon a judgment recovered by the said

Effie Eckman against the said Bradley Wood in the State of New Jersey on May 16, 1930, said judgment being properly proven by an exemplification thereof filed at the bar of the court. Counsel for Effie Eckman asked that the balance in the accountant's hands be awarded to the said Effie Eckman on account of said judgment.

There is thus presented to the court the question whether the balance in the hands of the guardian should be awarded to the executors for distribution under the supervision of the orphans court, or whether the balance should be applied by this court to the payment of the debts of decedent. We believe that this point is not open to question in Pennsylvania.

The jurisdiction of the orphans' court in the administration of decedents' estates is exclusive. As early as 1853, in the case of Whiteside *v.* Whiteside, 20 Pa. 473, 474, our Supreme Court said: "The Orphans' Court has become a very important part of our judicial system. The exclusiveness of its jurisdiction and the conclusiveness of its decrees have been placed, by the acts of Assembly and the decisions of this Court, upon a foundation which cannot be shaken. If there be anything besides death which is not to be doubted, it is that the Orphans' Court alone has authority to ascertain the amount of a decedent's property and order its distribution among those entitled to it." That these general principles hold good in the case of a balance in the hands of the guardian of a deceased weak-minded person is shown by the decision in Frankenfield's Appeal, 11 W. N. C. 373, decided in 1882. There the court said: "The Court of Common Pleas has no jurisdiction to distribute the estate of deceased persons. The fund can be paid to the legal representative of the deceased lunatic, whenever such a person shall be duly appointed, and he can make distribution according to law." This language is certainly broad enough to apply to distribution in payment of debts, as well as to distribution among next of kin.

Counsel for Effie Eckman contends that the instant case is governed by Wheatland's Appeal, 125 Pa. 38. With this we cannot agree. In Wheatland's Appeal there had been a sale of real estate of the weak-minded person, followed by the appointment of an auditor to distribute the fund realized. Pending the report of the auditor, the weak-minded person died. The question was whether the fund so realized should be paid over to the executors of the weak-minded person, or should be distributed among the creditors, and the court held that it should be distributed among the creditors.

There is a vital distinction between that case and the case now under consideration. The guardian in the present case was appointed in accordance with the provisions of the Act of May 28, 1907, P. L. 292, wherein it is provided, *inter alia*, that such guardian shall have the same powers and be subject to the same duties as a committee of lunacy theretofore. We are, therefore, referred back to the Act of June 13, 1836, P. L. 589, providing for the appointment of a commission of lunacy or habitual drunkenness. Section twenty of said act provides that such committee "shall have the management of the real and personal estate of such person, and shall from time to time apply so much of the income thereof as shall be necessary to the payment of his just debts and engagements, and the support and maintenance of such person, and of his family, and for the education of his minor children." It will be noted that this section provides only for the application of income.

Section twenty-one of said act provides: "If the income of the estate of such person shall not be sufficient for the purposes aforesaid, it shall be lawful for the committee aforesaid, under the directions of the court, to apply so much of the principal of the personal estate as shall be necessary for the

purpose." It will be noted that section twenty-one applies only to the personal estate and authorizes the application of principal only under direction of the court.

Section twenty-two of said act provides: "If the personal estate of such lunatic or habitual drunkard shall not be sufficient for the purposes aforesaid, it shall be lawful for the Court of Common Pleas, having jurisdiction of the accounts of the committee of such person, to make an order, authorizing such committee to sell at public sale, or mortgage, such parts of the same as the said court shall deem expedient."

Section thirty provides for the giving of a bond by the committee for the faithful application of the proceeds of such sale or mortgage, "according to the duties of his trust."

In Wheatland's Appeal, application was made for the sale of real estate for the payment of the debts of the lunatic. The court, in its opinion, made it clear that the ruling reason for its decision was that the funds to be distributed were the proceeds of the sale of real estate; that the sale of such real estate upon an application for its sale for the payment of debts created a trust, and that the fund was held by the guardian upon such trust. The court said: "Thus it will be seen that the sale of the real estate is under the immediate control and supervision of the court; indeed, the committee is but the receiver of the court, from which he derives his powers, and the fund, when it comes into his hands, is a trust fund." The court recognized that this same rule would not apply to the distribution of personal property held by the committee, for it said: "It is certainly true, as a general rule, that the Orphans' Court alone has authority to ascertain the amount of a decedent's estate and to order its distribution among those entitled to receive it: Whiteside v. Whiteside, 20 Pa. 473; it is equally true that the Court of Common Pleas has not power to decree distribution of a fund in the hands of a trustee among the heirs or next of kin of the deceased cestui que trust: Johnson's Estate, 2 Wharton 120; it must be awarded to the personal representatives, in order that after administration it may be distributed under the direction of the Orphans' Court, according to law: Frankenfield's Appeal, 11 W. N. C. 373. But when the decedent's estate consists in part or in whole of moneys or property held upon the terms of a trust, the personal representative can take only what remains after the trust is executed or fully settled."

These decisions are not in conflict. The appointment of a guardian creates a trust in accordance with the terms of section twenty of the Act of 1836, namely, to apply the income as therein designated. There is no trust in regard to application of the principal until order of the court, in the case of personal property, as provided in section twenty-one, or sale or mortgage, in the case of real estate, as provided in section twenty-two. When real estate is sold or mortgaged, a new trust arises in regard to the application of the proceeds.

In the present case, there is no real estate and there has been no order of the court in regard to application of the principal of the personal estate. Therefore, the guardian held the estate solely on the trust created by section twenty regarding the application of income only. The weak-minded person having died, under the authorities above cited, the principal should be awarded to the executors.

Counsel will prepare a decree in accordance with this opinion.