## In re DeLisio

*Samuel Gordon*, for accountant.

*James F. McMullen* and *John Franklin Shields*, for Commonwealth.

*T. B. K. Ringe*, Assistant City Solicitor, and *David J. Smyth*, City Solicitor, for City of Philadelphia.

*Victor J. DiNubile*, for administrator.

HEILIGMAN, J., September 5, 1935.—This is the audit of an account of a guardian of a weak-minded person, the guardianship having ended by reason of the death of the ward. The original guardian, Alfonso DeLisio, appointed July 26, 1932, by proceedings under the Act of May 28, 1907, P. L. 292, was removed by decree dated July 10, 1934, and the present guardian appointed. The

latter decree also provided that the original guardian and his surety should not be discharged from liability until his account was duly vouched, after notice, etc. His account and petition for discharge were filed on the same day, namely, July 10, 1934, but no action was taken thereon, except as just mentioned. According to said account there was no balance in the hands of the original guardian.

On February 1, 1935, the ward died and an administrator was duly appointed for his estate. The present guardian thereupon filed its account, together with a petition and supplemental petition for confirmation, distribution and discharge of guardian, all of which are now before the court. The account contains as credits three items inserted contrary to Rule 99 of the Rules of Court. The first of these, $156.50, counsel fees and costs of appointing the substituted guardian, paid at the time, we approve, but the fees and commissions to the guardian, paid at the time of filing the account we do not approve but strike from the account. The balance for distribution is thereby increased by $461.84. The supplemental petition properly asks for an allowance to the guardian of 5 percent on principal, or $386.84, which is allowed, and an attorney's fee of $200. Whether this is in addition to the $156.50 already paid, we have no means of knowing. However, $200 is sufficient to cover all services, and accordingly we allow the balance of the $200 not yet paid, to wit, $44.50, together with $8.25, additional costs of filing the account, and the balance for distribution is therefore $6,979.

In the petition, two claims were noted: one for $1,050.43, being the amount due the Bureau of Hospitals for the care of the ward at Byberry, for 253 2/7 weeks at $5 a week, less $216 paid on account; the other for $35 being the bill of Dr. John P. Mulrenan for professional services rendered the ward in 1930, prior to the appointment of a guardian. Another claim was presented at the audit by the Commonwealth of Pennsylvania for its share

of the maintainance of the ward while he was in Byberry, which, less amounts paid on account, amounts to $44. While these claims are admitted to be correct, payment at this time is resisted by the guardian on the ground that this court has no jurisdiction to distribute the assets of the estate because the ward is now dead. The contention is that the entire balance for distribution should be awarded to the administrator for accounting in and distribution by the orphans' court.

The Act of June 1, 1915, P. L. 661, provides for the support of feeble-minded persons confined in institutions of the Commonwealth. By its terms the court of common pleas has jurisdiction over awards for support, and by the decision in Harnish's Estate, 268 Pa. 128, the orphans' court has concurrent jurisdiction. See also Boles' Estate, 316 Pa. 179. By amendment (Act of May 10, 1921, P. L. 438) to section 2, however, it seems to be clear that the court in which an accounting is filed has jurisdiction to make an award to the Commonwealth. The amendment requires that notice be given to the Commonwealth of the filing of an account by any fiduciary of the property or estate of a weak-minded person confined in a State institution, together with notice of the time and place of audit, and provides that upon failure to give such notice the account shall not be confirmed, and the fiduciary shall be personally liable for the amount due the Commonwealth. For the amendment to mean anything at all, it must mean that after such notice is given, and the claim of the Commonwealth presented, it is to be adjudicated and awarded by the court; otherwise for what purpose would notice of the time and place of audit be given, and why should the fiduciary be penalized by personal liability for the amount of the claim if he failed to give such notice? It is our conclusion that the act is a special one, intended to facilitate the collection of claims due the Commonwealth in these cases, and that under it the claim of the Commonwealth should be heard, adjudicated and awarded at this audit.

Proper disposition of the claim of the county is not covered by the statute cited, except in section 7: In re Hoffmann, 258 Pa. 343, 346; which has no application to the present case, as there are sufficient assets to pay the claims of the county and Commonwealth in full. The latest appellate court case on the subject is Timmins' Estate, 112 Pa. Superior Ct. 430. In that case the court of common pleas made an order upon the guardian of the estate of a weak-minded person, appointed by that court, to pay $19.50 a week to a nurse to care for the ward. This amount was paid in full to the date of death. The ward having died, the guardian filed his account and petition for distribution. The nurse claimed additional compensation from the guardian for extra services, and was therefore notified of the filing of the guardian's account and of the time and place of the audit thereof. She did not prosecute the claim then, it being stated in the petition for distribution that the proper tribunal for adjudicating her claim was the orphans' court. When the administrator's account was called for audit in the orphans' court, the claim was presented and the auditing judge heard it, but declined to allow it. The nurse then petitioned the common pleas court to open the adjudication of the guardian's account, which petition was denied on the ground that the orphans' court had exclusive jurisdiction. The auditing judge in the orphans' court thereafter wrote a supplemental adjudication, in which these facts are recited, and stated that the nurse's claim should be heard somewhere, but the claim was again dismissed. The reasoning apparently was that if the services had been "necessaries" and had been supplied in an emergency, or had been supplied as a result of a contract with the guardian or an order of court, the estate would have been liable and the orphans' court would have had jurisdiction, but since the services were not of that nature, relief would have to be sought in the court having jurisdiction of the guardian and not in the orphans' court. The Superior Court did not follow the reasoning of the

lower court but affirmed squarely on the ground that the fact that the alleged claim had accrued during the period in which a guardian was in charge of the decedent's estate was a valid reason for disallowing the claim in the orphans' court. "The decree of distribution [of the common pleas court] was not appealed from, modified or reversed, and is conclusive upon her." In view of the facts, the decision is that a claim accruing during the guardianship must be passed on by the court having jurisdiction of the guardian, for a decree distributing the estate in the hands of a guardian, which does not make provision for such claim, is conclusive upon the claimant.

The effect of that decision is to require the county to present its claim at the audit of the guardian's account, as the claim accrued in part during the guardianship; in fact, if the payments on account were applied to amounts accruing prior to the guardianship, a substantial part of the claim accrued during the guardianship. Such being the case, we shall also adjudicate the claim of the county at this audit. The claim of Dr. Mulrenan should, of course, be presented at the audit of the administrator's account, as it arose prior to the guardianship.

There remains to be considered section 9(e) of the Orphans' Court Act of June 7, 1917, P. L. 363, and section 13(a) of the Fiduciaries Act of June 7, 1917, P. L. 447. The first, a reënactment of section 19 of the Act of June 16, 1836, P. L. 784, 792, gives to the orphans' court exclusive jurisdiction for the distribution of decedents' estates among creditors and others interested: Whiteside v. Whiteside, 20 Pa. 473. The second, a reënactment of section 21 of the Act of February 24, 1834, P. L. 73, 76, provides that the executor or administrator shall pay the debts of a decedent and shall prefer funeral expenses, etc. This proceeding here, technically, is not a distribution of a decedent's estate but the distribution of the estate of a weak-minded person at the termination of the guardianship. If the distribution were to the next of kin,

the acts just referred to apply: Frankenfield's Appeal, 11 W. N. C. 373; and probably apply to distribution to creditors of the weak-minded person as distinguished from those of the guardianship. The appointment of the guardian, however, places the estate in custody of the law under the charge of the court appointing the guardian: Tarr's Estate, 10 Pa. Superior Ct. 554; Wright's Appeal, 8 Pa. 57, 60; and it is in a sense withdrawn from the operation of laws not applying specifically to the administration of the estates of lunatics and weak-minded persons. Whether that is the theory or not, there are cases in which those statutes relating to decedents' estates have been disregarded. For example, in Yaple et al. v. Titus et al., 41 Pa. 195, 203, the court said: "Yet the charge of the property is in the court, though administered by a committee. After the return of an inquisition finding lunacy, the jurisdiction of the court over the property of the lunatic is complete, either for custody, for management, or for sale. And, though his death necessarily terminates all jurisdiction over his person, there are not wanting cases which assert that jurisdiction over the property continues, for some purposes, even after death: Ex parte McDougall, 12 Vesey 384. See also Shelford on Lunacy, 22, 23, 24."

Costs of the guardianship can be paid after the death of the ward: Ebling's Estate, 134 Pa. 227. In that case it is indicated (p. 235) that if the inquisition is found before death, the jurisdiction of the court attaches and orders may be made after death of the ward. In Wheatland's Appeal, 125 Pa. 38, the proceeds of the sale of real estate for the payment of debts, pursuant to an order made before the death of the ward, were distributed to creditors at the audit of the guardian's account, after the death, on the theory that the proceds had been appropriated to the creditors by the order of court. If the real estate had been the sole asset of the lunatic, the preferred creditors, such as the undertaker, would not have been paid. In Buck's Estate, 256 Pa. 359, 362, the opinion of

the lower court, adopted by the Supreme Court, states: ". . . as that court [common pleas] was without jurisdiction to do more than ascertain the balance remaining *after the payment of the debts lawfully contracted by the guardian*, and direct payment of the balance to the personal representative of the deceased lunatic for accounting and distribution in the Orphans' Court." (Italics supplied.)

The claim of the county in this case was not only an obligation which the guardian was obliged in law to assume: In re McCanna, 77 Pa. Superior Ct. 1; Act of June 25, 1895, P. L. 270; but one which was recognized by a payment on account.

We are therefore of the opinion that this court has jurisdiction to adjudicate the claims of the Commonwealth and of the county for maintenance, and that it should assume such jurisdiction, both in the interest of preserving the estate from extra expenses and costs and in the interest of a public policy that the institutions which support and maintain weak-minded persons should be promptly paid. . . .

The Commonwealth having appeared by its attorney, we regard the requirements of section 2 of the Acts of May 10, 1921, P. L. 438, and April 25, 1929, P. L. 704, as having been complied with.

## Decree

And now, to wit, September 5, 1935, the first and final account of the Broad Street Trust Company, guardian of the estate of Salvatore DeLisio, having been filed, and the petition of said guardian for confirmation of its account for distribution and for its discharge as guardian of said estate having been filed and presented, and proof having been submitted of the service of notice of the filing and audit of said account and of the hearing on said petition upon the next of kin of said Salvatore DeLisio, on motion of Samuel Gordon, Esq., attorney for petitioner, it is ordered, adjudged and decreed, that out of the bal-

ance in the hands of the Broad Street Trust Company, guardian of the estate of Salvatore DeLisio, to wit
$ 6,979.00

there be awarded the following sums:

| | | |
|---|---:|---:|
| To Commonwealth of Pennsylvania, for maintenance | $ 44.00 | |
| To County of Philadelphia, for maintenance | 1,050.43 | |
| To Broad Street Trust Co., commissions | 386.84 | |
| To Samuel Gordon, Esq., balance of counsel fee | 44.50 | |
| To Broad Street Trust Co., costs | 8.25 | |
| | | 1,534.02 |
| Balance | | $ 5,444.98 |

which is awarded to the administrator of the estate of Salvatore DeLisio, deceased, together with all additional income and interest on deposits.

The claim of John P. Mulrenan in the amount of $35 is dismissed without prejudice.

Upon making such payments and filing proper satisfactions of award therefor, the Broad Street Trust Company be discharged as guardian of the estate of Salvatore DeLisio, and that the Broad Street Trust Company be relieved of all further liability on its bond arising or growing out of the appointment of the said guardian. Leave is given to the guardian to make the necessary payments, assignments and transfers.