# Buck's Estate.

*Decedents' estates—Real estate—Conversion—Weak-minded persons—Act of May 28, 1907, P. L. 292.*

The proceeds of a guardian's sale of the lands of a weak-minded person under the Act of May 28, 1907, P. L. 292, are to be distributed after the death of the weak-minded person as realty and not personalty.

Argued Jan. 9, 1917.   Appeal, No. 96, Jan. T., 1916, by Lizzie M. Buck, from decree of O. C. Philadelphia Co., April T., 1914, No. 533, dismissing exceptions to adjudication in Estate of Daniel H. Buck, Deceased.   Before MESTREZAT, POTTER, STEWART, MOSCHZISKER and FRAZER, JJ.   Affirmed.

Exceptions to adjudication.

The facts appear by the following opinion of GUMMEY, J.:

Two sets of exceptions were filed to the adjudication in this estate; those filed by S. Traner Buck and C. Percy Buck were filed for the purpose of correcting errors in figures apparent upon the face of the record, and are sustained.

The other exceptions were filed on behalf of testator's widow, and the question raised is whether money and securities which appear in the account are to be distributed as personal property or as real estate—if as personalty, the widow takes one-half thereof absolutely, and if as realty, an estate for life only.

In 1909 Daniel H. Buck, then in his right mind, made his last will.

In June, 1912, he was declared to be weak-minded by decree of Court of Common Pleas No. 1 for Philadelphia County, as of June Term, 1912, No. 609, and a guardian for him was appointed.

In 1913, by authority of the Court of Common Pleas,

the guardian sold certain parcels of his ward's real estate, and subsequently, in 1914, Daniel H. Buck died without any change having occurred in his mental condition and after his death an account of the proceeds of the real estate so sold was filed by the guardian in the Court of Common Pleas and thereupon, by decree of that court entered March 26, 1914, the account was confirmed and the guardian directed to pay the balance of cash there shown and to deliver the securities in his hands to the executors of the will of Daniel H. Buck, deceased. It is the fund so received which is the subject of the present controversy.

The petitions which the guardian presented for leave to sell the real estate do not refer specifically to any act of assembly but it is evident the guardian was proceeding under the Act of May 28, 1907, P. L. 292 (6 Stewart's Purdon, 6546).

The Act of May 28, 1907, P. L. 292, does not provide how the proceeds from the sale of a feeble-minded person's land shall be held, and in this respect is like the Lunacy Act of June 13, 1836, P. L. 589 (2 Stewart's Purdon 2397, Section 40); and in a case arising after that act (Lloyd v. Hart, 2 Pa. 473), where a lunatic's land had been sold, the same question was raised which is now here presented, and Mr. Chief Justice GIBSON, in holding that the sale did not work a conversion, said (p. 478):

"Adverting, then, to what we may suppose would have been done had it been presented to the legislature for special provision, we can not think that power to convert beyond the exigencies of the occasion would have been conferred, since, had it not been for those exigencies, the legislature would have conferred no power at all. The power was to be exercised, not for the sake of conversion merely, but for a purpose beyond it; and beyond the accomplishment of such a purpose it is not to be supported......From these [cases cited] it appears that the equitable character of the property, when legally converted, depends on the will of the devisor, collected

from the purpose to be answered by it; but the committee had, in this instance, no will to exercise, or power to convert, as a devisor has, for motives of mere caprice, or for any motive at all not authorized by the statute. The sale was for maintenance of the lunatic and payment of his debts; consequently what remained when that was accomplished retained the interest of real estate."

Lloyd v. Hart (supra), has never been reversed, distribution was made as thereby directed (see Hart's App., 8 Pa. 32), and in our opinion it rules the case before us. It is true that the Act of 1836 does not, like the Act of 1907, provide for a sale "where it is for the interest and advantage of the said ward that the same shall be sold," but limits its application to sales for the payment of a lunatic's debts and for the support and maintenance of himself and his family; but the reasoning applied to sales by virtue of the Act of 1836 applies equally well to sales under the Act of 1907; and this was recognized by the legislature when it provided that a guardian appointed under the Act of 1907 "shall have precisely the same powers, and be subject to the same duties as a committee of lunacy in the State of Pennsylvania," and by our Supreme Court in construing the former Act of June 25, 1895, P. L. 300, relating to feebleminded persons, holding in Hoffman's Est., 209 Pa. 357, that that act was in pari materia with the lunacy acts, and should be construed upon the same general lines.

In reaching our conclusion we have not considered it necessary to discuss those cases which hold that the proceeds from the sale of a minor's real estate are to be distributed as money; the distinction is (as illustrated by Dyer v. Cornell, 4 Pa. 359; Pennell's App., 20 Pa. 515, and subsequent cases) that upon a sale of a minor's interest in land the proceeds thereof vest in the person entitled to it, to wit, the minor, and, therefore, in his hands are to be treated as money and upon his death pass to his personal representatives as personalty; in the case however of a lunatic "the committee is but the re-

ceiver of the court, from which he derives his powers, and the fund, when it comes into his hands, is a trust fund as much in custodia legis as if deposited in bank to its credit, or locked up in the strong box of the court, under the care of its officers" (Mr. Justice CLARK, in Wheatland's App., 125 Pa. 38, 46); and the importance of maintaining, so far as possible, the estate of a lunatic or feeble-minded person in the condition in which it was before the committee or guardian was appointed is evident, not only because to hold otherwise might change the course of descent, but also because the Act of 1907 provides in terms that if the afflicted person shall regain ability to care for his or her own property the court shall so decree and shall discharge the guardian "and thereupon the said person shall be, so far as the care of his or her property or person shall be concerned for the future, the same as if the proceedings against him or her had never been taken."

Nor do we agree with the exceptant that the fund should be distributed as money because so awarded the testator's executor by the Court of Common Pleas, as that court was without jurisdiction to do more than ascertain the balance remaining after the payment of the debts lawfully contracted by the guardian, and direct payment of the balance to the personal representative of the deceased lunatic for accounting and distribution in the Orphans' Court; this was expressly decided in Frankenfield's App., 11 W. N. 373, in which a decree entered by a Court of Common Pleas distributing the estate of a deceased lunatic was set aside because made without authority, Mr. Justice GREEN saying (p. 374):

"The decree of distribution, however, can not be sustained. It was entirely without authority, as the Court of Common Pleas has no jurisdiction to distribute the estate of deceased persons. The fund can be paid to the legal representative of the deceased lunatic, whenever such a person shall be duly appointed, and he can make

1917.]      Opinion of Court below—Opinion of the Court.

distribution according to law.    This subject was not presented to the attention of the court below."

The court dismissed exceptions filed in behalf of Lizzie M. Buck.    Defendant appealed.

*E. Cooper Shapley,* for appellant.

*W. S. Roney,* for appellee.

PER CURIAM, January 29, 1917:

The decree is affirmed on the opinion of the Orphans' Court dismissing exceptions to the adjudication.

---

# Schmidt Brewing Company *v.* Pittsburgh Life & Trust Company, Appellant.

*Practice, C. P.—Interpleader—Right to interpleader—Discretion of court—Act of March 11, 1836, P. L. 76, Section 4.*

1. The Act of March 11, 1836, P. L. 76, Section 4, providing that the court may, at the instance of the defendant, under certain circumstances, require a plaintiff to interplead with a third party where the defendant disclaims any interest in the fund in litigation and where the right thereto is claimed by or supposed to belong to such third party, who is not a party to the action, is not mandatory; but the court must exercise a judicial and not an arbitrary discretion when it determines the right to the interpleader. If the suggestion sets forth facts sufficient to bring the case within the provisions of the statute, the relief prayed for should be granted.

2. The provisions of the Act of 1836 are to protect a defendant from being subjected to the expense of defending two actions and the risk of being compelled to pay the same obligation twice.

3. The payment of money into court is not a condition precedent to the right to an interpleader.

4. An action was brought against a life insurance company by the administrators of the insured, and thereafter an action was brought on the same policies by a creditor of the decedent, who was named in the policies as beneficiary. Defendant thereafter filed a petition for an interpleader before a plea had been filed in the second suit, averring that both suits were for the recovery of the same