## Bidelman Estate.

196

Argued March 22, 1948. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*Frank P. Barnhart,* for appellant.

*John M. Bennett,* with him *Weimer, Bennett & Jones,* for appellee.

OPINION BY MR. JUSTICE ALLEN M. STEARNE, September 27, 1948:

The question presented is whether an orphans' court, under section 33 [f] of the Fiduciaries Act of June 7, 1917, P. L. 447, 20 PS, 736, should award *real estate* to appellant at a valuation fixed in the will of decedent

where, under an order of the court of common pleas, an agreement to sell such real estate had been previously approved by that court and the guardian of the estate of a then incompetent (decedent) had been directed by the court to make conveyance *to appellant and her husband,* but where such incompetent (decedent) died a few days after the order of sale and before the *balance* of the purchase money had been paid.

Margaret E. Bidelman, a widow, mother of eight children (appellant and seven brothers) was declared mentally incompetent. A corporate fiduciary was appointed guardian of her estate by a court of common pleas. The guardian petitioned that court for leave to sell the real estate therein described to *appellant and her husband* for *$6,380* in conformity with their written offer. It was averred in the petition that a sale was necessary in order to secure funds to defray hospital expenses and that no other source of funds was available. The petition was joined in by, or notice given to, all persons in interest. The court, on February 7, 1946, *approved* the *private sale* and, as authorized by section 6 of the Act of May 28, 1907, P. L. 292, 50 PS, 961, *decreed* that the guardian convey the real estate to appellant and her husband. $200 was paid to the guardian on account of the purchase price. Margaret E. Bidelman, the incompetent, died February 21, 1946, fourteen days after the order of sale. The balance of the purchase price has not been paid and no conveyance has been made by the guardian.

By the third item of the will of Margaret E. Bidelman, it was provided that appellant should have the option to purchase the real estate for *$4,000.* The proceeds from such sale and also the proceeds from sales of any other real estate, were to be divided equally among her eight children. Appellant was named, and qualified, as executrix.

It will be observed (p. 56 a) that appellant was aware of the terms of her mother's will when she and her husband entered into the written contract of sale with the guardian.

The substantive question is whether appellant *and her husband* will be required to pay the agreed consideration of $6,380 or whether the death of the incompetent, before the completion of the transfer, cancelled and annulled their agreement and order of the common pleas court and entitled *appellant* to elect to take such real estate for $4,000 under the terms of the will of decedent.

After the death of the incompetent, her guardian filed its account in the court of common pleas. The only asset was the $200 received on account of the purchase price of the real estate under the court's order. There were unpaid claims aggregating $1,318.78, representing administration expenses, debts and funeral expenses. On June 3, 1946, the court confirmed the account and awarded the gross asset of $200 to the executrix of the estate of the incompetent (who is the appellant) and transferred such unpaid claims to decedent's estate for consideration. No appeal was taken from this decree.

On August 15, 1946, appellant petitioned and secured a rule to show cause why the order of February 7, 1946, to sell real estate should not be annulled, discontinued and stricken from the record, because the sale had not been fully consummated and appellant desired to accept the real estate at the valuation named in the will. Upon answer and hearing, the court in an opinion and decree dated December 20, 1946, discharged the rule. No appeal has been taken from this decree which therefore has become final. Judge GRIFFITH, in his opinion, accurately said: "The petitioner contends that since the guardian's powers ceased upon the death of its ward, the order of sale should be stricken from the record. With this contention we cannot agree. The order of February 7, 1946, authorizing and directing the guardian to sell to

the petitioner and her husband was valid when made and based upon a valid contract, upon which a downpayment had been made. The fact that the guardian's powers ceased upon the death of its ward on February 21, 1946 (Frew's Estate, 340 Pa. 89) did not, we believe, render invalid the contract of sale. It is true that the guardian, after the death of its ward, can no longer execute and deliver a valid deed to the purchasers. However, upon the ward's death, the powers of the guardian, as her personal representative, passed to her executrix (Frew's Estate, supra), who now has the power and duty of enforcing the contract of sale against the purchasers."

In *Frew's Estate,* supra, Mr. Justice DREW quoted with approval the following language: "It is an elementary rule of law that when an imbecile dies, in fact, his guardian dies, in law; his legal power is at an end. His sole duty then is to render an account of his stewardship up to the date of his ward's death, giving the full amount of all debits and credits touching his administration, and of all unpaid claims and unfinished business. . . . The guardian is the personal representative of the ward while the ward lives; upon the ward's death the administrator or executor becomes his personal representative as to any and all things pertaining to debtors and creditors of the estate, whether such debt or credit arose out of transactions with the ward himself or his personal representative in his lifetime, the guardian."

*Frew's Estate* was followed in *Graham's Estate,* 147 Pa. Superior Ct. 57, 59, 23 A. 2d 235, which this Court affirmed in 346 Pa. 479, 31 A. 2d 125.

We therefore have a decision of the court of common pleas, unappealed from, that a binding and enforceable contract had been entered into by the guardian of the incompetent with appellant *and her husband,* but that the enforcement of such contract was now under the jurisdiction of the orphans' court. With this we agree.

When the ward died the guardian's right to seek enforcement of the contract ceased. Liability under the contract, however, did not terminate. Exclusive jurisdiction for the enforcement of the contract was thereafter in the orphans' court: Fiduciaries Act of June 7, 1917, P. L. 447, section 18 [b], 20 PS 612; *Gable v. Whiteside,* 242 Pa. 188, 88 A. 931; *Cardon's Estate,* 278 Pa. 153, 122 A. 234; *Bell et al. v. Bell,* 287 Pa. 269, 135 A. 219; *Mellinger's Estate,* 334 Pa. 180, 5 A. 2d 321; *Manzer v. Wycoff and Wycoff,* 78 Pa. Superior Ct. 560.

In the circumstances outlined, appellant petitioned the orphans' court to enter a decree awarding and adjudging the real estate in question to her under section 33 (f) of the Fiduciaries Act of June 7, 1917, P. L. 447, 20 PS 736. This section authorizes the orphans' court, in appropriate circumstances, to adjudge real estate to a distributee who is to account for the valuation thereof in the settlement of the fiduciary's account. Upon answer and hearing, President Judge NELSON of the Orphans' Court dismissed the petition. The decision of the orphans' court in dismissing the petition was correct. The obstacle to granting the relief is the *unappealed decision* of the common pleas court that there is a binding and enforceable outstanding contract for the purchase of this real estate executed by *appellant and her husband.* As decedent, in her lifetime, through her guardian, had transferred the equitable title to the real estate, her testamentary provision with respect thereto became inoperative.

*Buck's Estate,* 256 Pa. 359, 100 A. 866, and the cases therein cited, relied upon by appellant, are inapposite. There real estate of an incompetent was sold for the support and maintenance of the ward. After the death, the unused portion of the fund was regarded and distributed *as if* real estate. In the present case there is no question before us concerning the *distribution* of a fund derived from the sale of real estate. The question is

whether, *in the lifetime* of decedent, appellant *and her husband,* dealing with the guardian, concluded an enforceable contract. Section 6 of the Act of 1907, supra, provides for both *public* and *private* sales of the real estate of a mentally incompetent person. The guardian of the ward is required to petition the court for leave to sell. In the case of a *public* sale detailed requirements are enacted as to notice, advertising, etc. When the court has directed such public sale, the Act requires that it *"shall be confirmed".* There is a *proviso,* however, in the Act relating to *private sales.* It reads: "Provided, that if the court shall be of the opinion that, under the circumstances, a better price can be obtained by private sale than at public sale, the court may decree and approve the same."

Notwithstanding that provision, the argument of appellant seems to be that the Act requires that even where the court has "decreed and approved" a *private* sale as in this case, the guardian must nevertheless, *again* petition the court to *confirm* the terms of the *same* private sale which the court has already "decreed and approved". That is an unreasonable construction which we must reject: see art. IV, sections 51 and 52 Statutory Construction Act of May 28, 1937, P. L. 1019, 46 PS 551 and 552. Neither are we in accord with appellant's contention that the real estate had not been converted when a valid contract of sale had been concluded because of the decree and approval of the court. It has long been decided that a *contract for the sale of real estate* is considered, in equity, as a conversion of land into money. The vendor's interest thereafter ceases to be real estate. It becomes a chose in action and a personal demand for the consideration money. The legal title is held by the vendor only as security for the payment of the debt: *Longwell v. Bentley,* 23 Pa. 99; *Leiper's Appeal,* 35 Pa. 420; *Bender et al. v. Luckenbach,* 162 Pa. 18, 22, 29 A. 295 and 296. See also: *McClarren's Estate,* 238 Pa. 220,

228, 85 A. 1119, and *Smith v. Glen Alden Coal Company et al.,* 347 Pa. 290, 299, 32 A. 227.

When the contract to sell the real estate was decreed and approved by the court $200 was received by the guardian on account. Nothing more remained to be done by the vendor except to sign and acknowledge the deed. An equitable title had passed. It is immaterial that the purchasers were the daughter and her husband. The case must be considered as if the purchaser was an outsider with no interest under the will. We should not adopt a rule which deprives such a purchaser of the value of his bargain; returning the down payment may not compensate; he may have spent money in searches, title insurance and the like, which a vendor would be required to pay in failing to make a conveyance agreed upon. Consideration of the sanctity of contracts requires the adoption of the rule which we here apply.

As no proceeding is now pending before the orphans' court for the *specific performance* of the contract, no decree may be made concerning the same. We think the court inadvertently stated as its conclusion of law that petitioner and her husband are indebted in the sum of $6,180; the amount payable will be determined in the specific performance action if it is found necessary to bring one.

Decree affirmed, without prejudice to the rights of the parties in interest to proceed in the orphans' court for the specific performance of the contract. Costs to be paid by appellant.

---

DISSENTING OPINION BY MR. JUSTICE JONES:

The majority opinion seems to me to proceed upon an erroneous legal premise and, as a natural consequence, unnecessarily inflicts a hardship upon the decedent's only daughter and testamentary favorite. But, more serious still, is the effect in general which the decision is

bound to have, for it virtually constitutes a flat repudiation of the rationale whereon there have been uniformly based a century's decisions by the courts of this State relative to the care and protection of the property of weak or feeble-minded persons who, by due adjudication, have become wards of court.

The decision is all the more difficult to comprehend, for the majority opinion not only correctly confirms that "When the ward died the guardian's right to seek enforcement of the contract ceased" but also quotes approvingly from the opinion of the Common Pleas Court on a collateral phase of this same controversy (the instant appeal is from a decree of the Orphans' Court) to the following effect: " 'It is true that the guardian, after the death of its ward, can no longer execute and deliver a valid deed to the purchasers' ". No other conclusions in such connection would be admissible in the circumstances. That the power and authority of a guardian of a weak-minded person over the ward's property dies in law when the ward dies in fact is the law of this State: see *Frew's Estate,* 340 Pa. 89, 91, 16 A. 2d 26; or, as stated in *Graham's Estate,* 147 Pa. Superior Ct. 57, 60, 23 A. 2d 235,—"The powers of a guardian end with the life of the incompetent". That statement was made avowedly upon the authority of *Gerlach's Estate,* 127 Pa. Superior Ct. 293, 301, 193 A. 467, where the same concept was expressed in the following language: "The functions and powers of a guardian or committee cease with the life of the incompetent; there remain only the duty and liability to account".

And, by analogous token, when the need to convert property of a weak-minded ward no longer exists (as is manifestly the case once the ward dies), the jurisdiction of the court to proceed to a sale of the ward's real estate or even to complete a sale not theretofore finally confirmed is at an end, if the statute's intendment is respected. The service of the incompetent's interest and

welfare is the sole justification for a judicial sale, mortgaging or leasing of his real estate: see Sec. 6 of the Act of May 28, 1907, P. L. 292, 50 PS § 961, pursuant whereto the guardianship proceeding in the present instance was had. In *Lloyd v. Hart*, 2 Pa. 473, 477, which involved a lunacy proceeding under the Act of June 13, 1836, P. L. 589 (a decision no less presently pertinent as will later appear), Mr. Chief Justice GIBSON, speaking for this court, said (p. 477),—". . . it is the principal, if not the only, duty of the committee to provide for the lunatic's personal comfort and interest, without regarding the ulterior and conflicting interests of those who may be entitled to the succession; . . .". As a logical consequence, the power to convert a weak-minded person's real estate has been judicially hedged about with limitations so as to preclude the achievement, in such connection, of anything save, alone, the promotion of the ward's personal interest and well-being.

Thus, in *Lloyd v. Hart*, supra, where the committee sold real estate of the lunatic ward in an amount which later proved to be in excess of the ward's lifetime needs and requirements, the learned and eminent Chief Justice said for this court that ". . . we cannot think that power to convert beyond *the exigencies of the occasion* [viz., the ward's necessities and comfort] would have been conferred [had the matter been presented to the legislature for special provision], since, *had it not been for those exigencies*, the legislature would have conferred no power at all". (Emphasis supplied). And, so it was that, in that case, the cash obtained from the conversion by the committee in excess of the ward's actual needs was held to pass, upon the death of the ward, to his heir as realty and not to his next of kin as personalty. And, that ruling, so made in 1846, was followed by this court without deviation as lately as in *Buck's Estate*, 256 Pa. 359, 100 A. 866, where we affirmed per curiam a ruling by the Orphans' Court of

Philadelphia County that the proceeds of a guardian's sale of lands of a weak-minded person under the Act of 1907 are distributable after the death of the ward as realty and not as personalty. In the lower court's opinion in that case (upon which the affirmance here was based), Judge GUMMEY correctly noted (p. 361) that "Lloyd v. Hart (supra), has never been reversed . . .". To distinguish those cases from the present on the ground that we are not now confronted with a question of distribution is to miss the essence of their rationale, viz., that the law neither approves nor gives operative effect to a conversion of a weak-minded ward's property "beyond the exigencies of the occasion".

No differentiation is to be noted with respect to the restrictions upon the power to sell the real property of a weak-minded person because *Lloyd v. Hart* involved a lunacy proceeding under the Act of 1836 whereas we are presently concerned with a guardianship of a weak-minded person under the Act of 1907. *Buck's Estate*, supra, also arose under the Act of 1907 and it was there stated (p. 361) that ". . . the reasoning applied to sales by virtue of the Act of 1836 applies equally well to sales under the Act of 1907; and this was recognized by the legislature when it provided that a guardian appointed under the Act of 1907 'shall have precisely the same powers, and be subject to the same duties as a committee of lunacy in the State of Pennsylvania,' . . .". Earlier, Mr. Chief Justice MITCHELL had pointed out in *Hoffman's Estate*, 209 Pa. 357, 359, 58 A. 665, that "The Act of June 25, 1895, P. L. 300 [relating to feeble-minded persons], is in pari materia with the lunacy acts, and should receive a construction upon the same general lines". The observation is no less pertinent with respect to the Act of 1907.

How, then, does the contract for the sale of the ward's realty, which still remains unperformed because of the cessation of the ward's need due to her demise,

come within the jurisdiction of the Orphans' Court for enforcement by way of specific performance,—a contract, be it remembered, whose enforcement the guardian is admittedly without right to seek and which the Common Pleas Court no longer has the power to confirm finally or establish?

This unusual transition of jurisdiction, accomplished by judicial fiat, whereby a contract is held to be enforceable in a court other than the *only* court which ever possessed the statutory power to authorize its execution and to confirm its completed performance is made to take place because, some months after the ward's death, the prospective purchasers named in the contract petitioned the Court of Common Pleas, having jurisdiction of the matter, to vacate the sale proceeding which that court refused to do, saying, in the same connection, that ". . . upon the ward's death, the powers of the guardian, as her personal representative, passed to her executrix (Frew's Estate, supra), who now has the power and duty of enforcing the contract of sale against the purchasers". From the order then entered by the Common Pleas Court, discharging the rule to discontinue the sale proceeding, no appeal was taken; and, because of that, the majority of this Court now hold that, *unappealed from*, the order of the Common Pleas Court conclusively establishes that the contract, made under the aegis of that court for legally exclusive performance there but no longer so performable, became an asset of the deceased ward's estate and, as such, is enforceable in the Orphans' Court. Thus, the majority opinion states that "The obstacle to granting the relief is the *unappealed decision* of the common pleas court that there is a binding and enforceable outstanding contract for the purchase of this real estate executed by *appellant and her husband.* As decedent, in her lifetime, through her guardian, had transferred the equitable title to the real

estate, her testamentary provision with respect thereto became inoperative."

It is plainly incorrect, I submit, to say that "there is a binding and enforceable outstanding contract for the purchase of this real estate" when the only thing that could ever have effectuated the contract was the ultimate imprimatur of the Court of Common Pleas which was never obtained and cannot now be obtained, the jurisdiction of that court in the premises having become *functus*. And, it is likewise incorrect to say that the weak-minded "decedent, in her lifetime, through her guardian, had transferred the equitable title to the real estate . . .". The legal situation is that the mentally incompetent ward transferred *absolutely nothing,* either equitable or legal, through her guardian. It was only the Common Pleas Court, having jurisdiction of the ward and her property, that could alien or charge her estate in any manner or degree. The fallacy in the reasoning of the majority opinion in this particular connection resides in treating, as an ordinary fiduciary, a guardian of a weak-minded person appointed under the Act of 1907; see *Interboro Bank & Trust Co. of Prospect Park, Guardian, Appeal,* 359 Pa. 315, 59 A. 2d 101. Such a guardian does not have even the slightest trace of the limited discretion imaginably attending the most restricted fiduciary: cf. *Davidson's Estate,* 323 Pa. 113, 116, 185 A. 782. He is but a bailiff of the court whose ward the incompetent really is. As observed by Chief Justice GIBSON in *Lloyd v. Hart,* supra (p. 478),—"A committee [in lunacy] is a bailiff whose power is limited to the mere care of the estate under the direction of the court; . . .". And, in *Gerlach's Estate,* supra, the Superior Court said (p. 300) that "A feeble-minded or weak-minded person is the ward of the court appointing the guardian, and the guardian is simply its bailiff or agent

in protecting him and his estate". Manifestly, the unperformed contract in the present instance did not create any equitable charge against the ward's estate. The guardian lacked the legal capacity to make it such; and merely partial compliance with statutorily prescribed court procedure for a judicial sale of an incompetent's real estate surely cannot be held to create such an estate in the prospective purchaser.

The action of the Court of Common Pleas in refusing to discontinue the sale proceeding following the ward's death was *coram non judice* and, rightly, therefore, should have been completely disregarded as being of no legal effect. The application in such connection was improvidently made, undoubtedly, out of a mistaken sense of caution. Upon the death of the incompetent, the court's power to proceed further with the uncompleted sale and transfer ceased. No one disputes that. What the court was thus incapable of doing by direction should not be permitted to result by indirection and, particularly, not on the basis of implications drawn from the court's refusal to act in a matter where the judicial power to act affirmatively had terminated. The appellant did, however, move advisedly when she abandoned the abortive proceeding taken in the Common Pleas Court after her mother's death and went directly to the Orphans' Court, as was her legal right under Section 33(f) of the Fiduciaries Act of June 7, 1917, P. L. 447, 20 PS §736, for the allocation to her, by virtue of her mother's will, of the real estate in controversy at the valuation fixed therefor in the will.

Nothing herein said conflicts in any way with the germane principle of *Frew's Estate,* supra, upon which the majority opinion ostensibly relies. The pertinent ruling there was that upon the death of a weak-minded ward, his administrator or executor becomes his personal representative as to any and all things pertaining to debtors and creditors of the estate whether liabilities or claims of such arose out of transactions conducted

by the decedent in his lifetime while mentally competent or by his guardian while he was a ward of the court as a weak-minded person. But, that does not mean that an inchoate or transitory right or liability which has never accrued and can never legally be made to mature under the only procedure prescribed for the purpose can be taken under the jurisdiction of the Orphans' Court for supposedly equitable treatment and completion.

Because of the unconscionable manner in which the lunacy statutes could possibly be used by designing persons for their selfish material benefit rather than for the ward's welfare, this Court has cautioned in times past that these acts should be strictly pursued and jealously guarded against perverted uses. We have already seen what Chief Justice GIBSON said in *Lloyd v. Hart* about disregarding "the ulterior and conflicting interests of those who may be entitled to the succession; . . .". In *Hoffman's Estate,* supra, Mr. Chief Justice MITCHELL characterized the similar and "in pari materia" Act of 1895, relating to feeble-minded persons, as ". . . a dangerous statute easily capable of abuse by designing relatives to accomplish the very wrong intended to be guarded against, and therefore to be administered by the courts with the utmost caution and conservatism". In *Bryden's Estate,* 211 Pa. 633, 637, 61 A. 250, the petition of children for the appointment of a guardian of the estate of their mother under the Act of June 19, 1901, P. L. 574, relating to weak-minded persons, was refused by the Orphans' Court of Luzerne County.[1] On appeal, this court affirmed per curiam on the opinion of the lower court but, at the same time, took occasion to observe that the case furnished "an illustration of the dangers of the statute referred to in Hoffman's Estate, 209 Pa. 357".

---

[1] Under the Act of 1901, cit. supra, the Orphans' Court, as well as the Court of Common Pleas, had jurisdiction to entertain the authorized proceeding.

Like dangers are no less present here! It must be evident that to force the completion of the sale of the realty to the daughter and her husband according to the terms of their contract with the guardian could not possibly be for the benefit of the incompetent ward who is already deceased. The desire to hold the daughter and her husband to their contract offer for the property emanates from the decedent's sons who will accordingly benefit materially at the expense of their sister. While the decedent's will (made when she was admittedly competent) divides all of her property for distribution equally among her children, she thereby gave her daughter the right to take the real estate (here in controversy) at a valuation of $4,000. Inasmuch as the daughter and her husband agreed in the guardianship proceeding to pay $6,380 for the same property, the possible gain to the sons, as testamentary beneficiaries, is apparent. But, that can furnish no justification for now effectuating an uncompleted sale (initiated under a statute with which the Orphans' Court has nothing to do) by simulated adaptation of the processes and powers of the latter court. The majority opinion notes that the daughter knew of the testamentary provision respecting the real estate when she and her husband made their bid for the property in the guardianship proceeding, but makes no comment upon that circumstance. In no event, however, could the fact that the daughter did bid considerably more for the property for the mother's lifetime benefit than what the daughter could have gotten the property for from her mother's estate after the latter's death, afford any inference adverse to the appellant. Her brothers also knew that she could take the property after her mother's death under the latter's will at a $4,000 valuation. Yet, they have striven to deprive her of that testamentary privilege although there is no longer any occasion to sell the property for the mother's need. The only power of sale ever germane to the facts of this case was the power

conferred by the Act of 1907. The remenant of an abandoned proceeding under that Act should not be permitted to advantage avaricious volunteers of a deceased weak-minded person.

However, the real seriousness of the present ruling lies in its capacity for harm as a precedent. Not otherwise is it of any material significance. So far as the ultimate disposition of the substantial controversy is concerned, the present decision is utterly inefficacious. No one has yet suggested, nor will it likely be suggested, that, by attributing to the Orphans' Court the power which the majority opinion ascribes, the existing valid will of the deceased ward has been rendered inoperative.

The question of the daughter's right to take the real estate here involved for a consideration of $4,000 by virtue of the deceased mother's testamentary devise will recur upon the audit of an accounting of the balance for distribution in the decedent's estate. (The present litigation was instituted thus early and is now here on review only because of the specific procedure provided by Sec. 33(f) of the Fiduciaries Act of 1917 for the allocation of devises made to executors upon conditional considerations.)

The unconsumed proceeds from the sale of the realty (when enforced by the Orphans' Court) will pass as realty and not as personalty: see *Lloyd v. Hart* and *Buck's Estate,* supra. Accordingly, if the $4,000 consideration testamentarily required of the executor-devisee, together with any other property of the decedent, proves sufficient to discharge all of the debts and costs of administration of the decedent's estate, the court of distribution will be bound by the terms of the will to decree to the daughter the balance of the proceeds of the sale of the realty in excess of $4,000, viz., $2,380; and, so, the enforcement of the sale will have been in vain.

Mr. Justice PATTERSON joins in this dissent.