IN THE MATTER OF DOROTHY CURTIS, AN ALLEGED
MENTAL INCOMPETENT.

IN THE MATTER OF THE PROBATE OF THE WILL OF
DOROTHY CURTIS, DECEASED.

Superior Court of New Jersey
Chancery Division—Bergen County

Decided December 10, 1979.

*James R. Masch* for plaintiff Dorothy Curtis (*Contant, Contant* and *Meehan*, attorneys).

*Anthony J. Pace* and *Marvin H. Gladstone* for Gino Formoso (*Anthony J. Pace* and *Gladstone, Hart* and *Rathe*, attorneys).

*Thomas J. Callahan* and *Robert E. Hanna, Jr.*, for Northern Valley Association for the Preservation of the Abram Demaree Homestead (*Kelly* and *Callahan* and *Robert E. Hanna, Jr.*, attorneys).

LESTER, J. S. C.

This case presents an issue of law of first impression in this State. The question presented is whether the executors of the estate of decedent Dorothy Curtis may sell certain property which was owned by her to one Gino Formoso where a stipulation and an agreement with respect to such real estate had previously been approved by the court approving the conveyance to the Northern Valley Association for the Preservation of the Abram Demaree Homestead [1] by the guardian of Dorothy Curtis. At that time Dorothy Curtis was incompetent but alive. It is the position of Formoso and the executors that the failure to transfer prior to the death of Dorothy Curtis left the guardian with no authority, and this court without jurisdiction, to enforce the settlement made on the record.

Both case law and common sense dictate that the settlement be enforced and that the executors be directed to convey to the

---

[1] Northern Valley Association for the Preservation of the Abram Demaree Homestead, sometimes referred to in this opinion as Friends of Demaree, is a group of Northern Bergen County residents devoted to the preservation of the pre-Revolutionary stone house of Abram Demaree, the property here involved.

Friends of Demaree the property in question under the terms and conditions made and agreed upon among the Friends of Demaree, Gino Formoso and the guardian *ad litem.*

The history of this matter is little in dispute. Prior to March 1, 1979 there existed a certain power of attorney from Dorothy Curtis to her attorney. That power was utilized on her behalf, and a contract was entered into between Dorothy Curtis and Gino Formoso for the sale of the piece of property in Closter, New Jersey. The contract was contingent upon Formoso's obtaining a variance authorizing the utilization of the property in question as a restaurant. He acted under the contract and expended moneys to repair the premises and to acquire the variance. Nonclosure of title was occasioned by a question raised by the title company with respect to the competency of Dorothy Curtis at the time she executed the power of attorney. On March 1, 1979 Dorothy Curtis was declared a mental incompetent and Richard C. Keel was appointed guardian of her person and property. On March 15, 1979 Formoso tendered $10,000 as a deposit for the acquisition of the property in question (the sale price being $100,000), and the guardian sought approval from the court for the sale of the property of the incompetent under a new contract which was entered into between the guardian and Formoso. This new contract was substantially similar to the contract entered into prior to March 1, 1979. On May 21, 1979, the return day of the guardian's motion to approve the contract of sale, counsel for the Friends of Demaree advised the court formally that the Friends of Demaree wished to make an offer to purchase the property.

It appears that as early as August 4, 1978 the Friends of Demaree had expressed an interest in purchasing the property, and that desire to purchase was reaffirmed by a letter dated April 3, 1979 to the guardian. On May 21, 1979 the court, after listening to the parties, advised the applicant-guardian, the Friends of Demaree and Formoso that the property would be sold on May 23, 1979 to the highest bidder, and that Formoso

would be protected to the extent that he had expended money "out of pocket" relying on the contract. Formoso was asked to file an affidavit concerning these expenditures and he, in fact, did so.

On May 23, 1979 the parties met and settlement negotiations took place. Initially, agreement was not reached, and the court was about to set forth on the record its ground rules for an auction of the property when a last-minute accord was agreed upon among the guardian, Formoso and the Friends of Demaree. The transcript of May 23, 1979 is clear. The court, after the settlement was placed upon the record, directed in furtherance of that settlement, that an order was to be submitted authorizing the guardian to sell to the Friends of Demaree upon the terms agreed upon by the parties. Basically, the settlement was that the Friends of Demaree would pay to the guardian $105,000 ($5,000 more than the estate would have received had it been sold to Formoso) and, in addition thereto, the Friends of Demaree would have to pay to Formoso the sum of $21,596.63, representing his out-of-pocket expenses. That is, the Friends of Demaree were paying, or were to pay, a total of $126,596.63 on certain terms, all as set forth on the record. The court readily approved this agreement in the incompetent's interest, since the estate was receiving $5,000 more than it would have under the contract with Formoso, and Formoso was being reimbursed for his out-of-pocket expenses up to that date. Further, the public interest was being served. Inherent in the discussions between the parties, and most relevant with respect to the attitudes of the parties, was the fact that the house on the property in question is over 200 years old. The expressed desire of the Friends of Demaree was to preserve this landmark. To protect Formoso, however, one of the items agreed upon on May 23, 1979 was that if for a period of ten years, the Friends of Demaree intended to sell the property in question for a commercial use, Formoso would then have the right of first refusal to purchase the same. Both parties submitted forms of an order,

but no order was ever agreed upon or signed. The matter was to have been heard by the court when Mrs. Curtis died.

It has been argued that the contract approved by the court during the life of Mrs. Curtis, while it involved a purchase price of $5,000 more than that agreed to by Formoso, contained a reverter clause to the New Jersey Historical Society while, initially, the contract between Formoso and the guardian contained a reverter clause with the reverter running not to the Historical Society but to Curtis—that is, the Curtis family. The reverter clause in both instances was conditioned upon the purchaser maintaining for a period of 20 years the historic, architectural integrity of the building. The court would have settled the form of order protecting the interests of the incompetent, and the settlement would have been enforced.

In any event, the court never had the opportunity to act on the form of order. Mrs. Curtis died before the hearing was scheduled.

The executors now argue that the death of Dorothy Curtis terminated the guardianship and the court's jurisdiction, which is statutory and depends for its existence upon a viable guardian and a visible ward, citing *N.J.S.A.* 3A:16 4; *R.* 4:66 1 *et seq.*, and citing, further, the case of *In re Beier*, 48 *N.J.Super.* 450 (Ch. Div. 1958). They argue that the guardianship and the jurisdiction of the court having been terminated, there was an equitable conversion of title into the purchaser, Gino Formoso, not by reason of the contract with the guardian but by reason of the initial contract with Dorothy Curtis' attorney-in-fact prior to her adjudication as being an incompetent. On the other hand, the Friends of Demaree argue that all parties hereto (by whatever name and whatever capacity) agreed that a serious question of law had arisen in or about May 1979, and that the settlement placed upon the record and the court's order entered orally that day would be, and should be, binding upon all of them. They distinguish *Beier* and argue that it is not here relevant. They do cite, as being dispositive of the factual

situation here before the court, a 1948 Supreme Court of Pennsylvania case, *In re Bidelman's Estate*, 360 *Pa.* 195, 61 *A.2d* 355.

An analysis of both of those cases is in order since neither *Beier* nor *Bidelman* are dispositive of the factual situation here before the court. We find no New Jersey case on all fours. In fact, the rationales of *Beier* and *Bidelman* are not inconsistent, and it is the unique, factual situation before this court that must govern. We seek to do equity, to protect the integrity of any contractual or legal rights which are vested, and to protect the public interest.

The *Beier* decision must be distinguished factually from the present case. In *Beier* the deceased was adjudicated an incompetent and a guardian duly appointed. The guardian filed suit for leave to sell certain real estate owned by the incompetent and obtained a judgment for the sale which expressly required that before any deed could be executed the guardian was to report the sale to the court for its confirmation. 48 *N.J.Super.*, at 451. The property was sold at public sale, but the incompetent died prior to the court's confirmation. *Ibid.*

Hence, the *Beier* court properly held that the incompetent's death prior to the court's confirmation of the sale stripped the guardian and the court of the power to consummate the sale. *Id.* at 452. Such a set of facts is not present here. In the present case a settlement between a guardian and certain purchasers was spread upon the record in open court. The court, in its acceptance and approval of the settlement, confirmed the sale in fact as well as in law. All the essential terms of the sale were agreed to by the parties and confirmed by the court. All that remained to be done was the settling of the form of order and the drafting of the necessary documents for closing.

The present litigation is closer in fact and in law to the *Bidelman* case. In *Bidelman* a private sale of an incompetent's land was approved by the court, a contract of sale executed and a deposit accepted. The incompetent died 14 days after the

order of sale but before the balance of the purchase price was paid and title conveyed. 61 *A.2d* at 356. The court held:

> The petitioner contends that since the guardian's powers ceased upon the death of its ward, the order of sale should be stricken from the record. With this contention we cannot agree. The order of February 7, 1946, authorizing and directing the guardian to sell to the petitioner and her husband was valid when made and based upon a valid contract, upon which a downpayment had been made. The fact that the guardian's powers ceased upon the death of its ward on February 21, 1946 (Citation omitted) did not, we believe, render invalid the contract of sale. It is true that the guardian after the death of its ward, can no longer execute and deliver a valid deed to the purchasers. However, upon the ward's death the power of the guardian, as her personal representative, passed to her executrix (Citation omitted) who now has the power and duty of enforcing the contract of sale against the purchasers. *Ibid.*

Here, a settlement was approved by the court, and a sale according to the terms of that settlement was ordered. The Friends of Demaree had expended funds toward the purchase in the form of a $10,000 deposit to be held in escrow.

Though a contract of sale had not yet been executed in this case, the essential terms of the sale were approved by the court within the context of the settlement, and consideration passed from the Friends of Demaree. The oral order of this court, which was entered in substance on May 23, 1979, was based upon a binding settlement. All that remained were the formalities of settling the form of order and closing the deal. There was no condition precedent to the confirmation of the sale, and equitable title passed to the Northern Valley Association for the Preservation of the Abram Demaree Homestead by virtue of the settlement. The rationale of *Bidelman* is sound and convincing. The *Beier* and *Easterline v. Bean*, 121 *Tex.* 327, 49 *S.W.2d* 427 (Sup.Ct. 1932), line of case law is not controlling.

While Dorothy Curtis was alive, the court and the guardian had a duty to her to act in her best interests. Neither the heirs

nor the executors had any right to anticipate that any of the proceeds of the sale approved of by the court under the settlement agreement would eventually be available to them as an estate either to administer or to inherit from. The settlement was openly made and was fair and just under all of the circumstances. Formoso agreed. The Friends of Demaree expended funds and paid consideration. It is the delay that caused the problem. Surely, if the matter had been brought before the court to settle the form of order without delay after the hearing on May 23, 1979, the property would have been, and could have been, transferred to the Friends of Demaree prior to the death of Dorothy Curtis. Should the delays be the effective cause of changing the rights of the parties? I think not. All of the parties now before the court were before the court at the time of settlement. Courts are jealous of settlements fairly made, appropriately drawn and agreed upon by the parties and, unless there is good cause shown, they should not be set aside except in extraordinary circumstances. See *Jannarone v. W. T. Co.*, 65 *N.J.Super.* 472, 476 477 (App.Div.1961). None here exists. The fact that the ex-guardian, Richard Keel, now a beneficiary under the trust created by the will of the deceased, together with the other beneficiaries, Alice T. Wright and Helen Keel, now "consent to the proposed sale by John M. Contant and Richard John Contant, co-executors, of the last will and testament of Dorothy Curtis, to Gino Formoso" (consent forms submitted to the court dated September 19, 1979) should not, and must not, take away from the Friends of Demaree the rights which they obtained under the agreement of May 23, 1979, and the consideration paid.

The settlement agreement of May 23, 1979 will be enforced. The executors will be directed to convey the property in question to the Northern Valley Association for the Preservation of the Abram Demaree Homestead under the same terms and conditions as the guardian should have conveyed it had an order been entered in accordance with the May 23, 1979 settlement.

The court is prepared to settle the form of order it would have entered had Dorothy Curtis remained alive and incompetent.

Judgment will be entered in favor of the Northern Valley Association for the Preservation of the Abram Demaree Homestead and against the executors and Formoso directing that the property in question be conveyed to the Northern Valley Association for the Preservation of the Abram Demaree Homestead under the terms and conditions dictated by the settlement of May 23, 1979. No costs.